LLOYD TEVIS AND JOHN F. McCAULEY, APPELLANTS, v. WM. HICKS, AND SARAH (his wife), H. C. SWAIN AND E. J. McINTYRE, RESPONDENTS.

OCCUPANCY OF LANDS BY TENANTS IN COMMON.—Tenants in common hold their lands by unity of possession, and each and every one of them has the right to enter and occupy the whole of the common lands, and every part thereof.

POSSESSION OF ONE TENANT IN COMMON.—One tenant in common has no share, except that which is undivided, and has no right to exclude his co-tenant from any portion of the common lands.

*Carpentier* v. *Wilson* (27 Cal. 524) cited and approved.

WRIT OF ASSISTANCE—EXECUTION OF.—It is the duty of the Sheriff, in the execution of a writ of assistance, to place the purchaser on foreclosure of mortgage of an estate in common in the possession of every part and parcel of the land, jointly with the other tenants in common.

IDEM.—In the execution of the writ, the Sheriff cannot remove any of the tenants in common who hold under a title derived from a source independent of him through whom the purchaser claims.

WRIT OF ASSISTANCE—SECOND WRIT.—If the return to the first writ does not clearly declare that it has been fully executed, and it is made to appear by affidavits that it has not been, it is competent for the Court to issue another writ.

APPEAL from the District Court of the Sixth District, County of Sacramento.

The case is stated in the opinion.

*Geo. Cadwallader,* for Appellants.

*Coffroth & Spaulding,* for Respondents.

SPRAGUE, J., delivered the opinion of the Court:

The defendant, being the owner of an undivided interest (stipulated to have been between one fourth and one third) of the rancho of San José de los Moquelumnes, situate partly in the County of Sacramento and partly in the County of San Joaquin, in this State, executed three several mortgages thereon to John F. McCauley, to secure the payment of money due from him to McCauley. The first mortgage was executed November 30, 1861, as security for the payment of the sum of $13,688 37. The second mortgage was executed November 29, 1862, to secure the payment of $10,000, in gold coin, with interest at the rate of one and one half per cent. per month ; and the third was executed January 19, 1864, to secure the payment of $8,754, with interest at the rate of one and one half per cent. per month. These several mortgages described the premises mortgaged as all the interest of the mortgagor in the rancho San José de los Moquelumnes and Hicks' Bridge, without other description, so far as the present record discloses; but it is stipulated that the interest held by the mortgagor in said rancho at the date of the aforesaid several mortgages, was an undivided interest of between one fourth and one third of the entire rancho. McCauley, having assigned the indebtedness which these several mortgages were given to secure, to Tevis, the latter, in a proceeding instituted by him for that purpose, obtained a decree of foreclosure in the Sixth District Court against Hicks, of all the premises described in the several mortgages, except the Hicks bridge, and an order of sale of the mortgagor's interest in the rancho San José de los Moquelumnes, "that is, such interest as he had at the date of

said several mortgages, or had since acquired," to satisfy the amount found to be due, in the sum of about $50,000. Upon order of sale subsequently issued upon such decree, the Sheriff of Sacramento County, on the 2d day of December, 1867, sold to John F. McCauley, all the right, title and interest of the mortgagor, William Hicks, in and to the rancho San José de los Moquelumnes, which he had at the respective dates of the several mortgages, or that he had since acquired, for the sum of $40,000. Subsequently, after the expiration of six months from the date of such sale, no redemption therefrom having been made, to wit, March 23, 1868, McCauley obtained a Sheriff's deed of the premises by him so purchased, in which deed the description of the premises is the same as in the order of sale. Thereafter, on the 7th day of May, 1868, upon application of McCauley, a writ of assistance was issued by the Sixth District Court, directed to the Sheriff of Sacramento County, commanding him to "go to and enter upon the said tract of land hereinafter described, and that you eject and remove therefrom the said William Hicks, and that you place the said John F. McCauley or his assigns, without delay, in the full, peaceable and quiet possession of the following described property and premises, that is to say : All the right, title and interest, and possession and claim of possession, that William Hicks had on the 30th day of November, 1861, the 29th day of November, 1862, and on the 19th day of November, 1864, or has since acquired, or now has in and to that certain tract of land situated partly in the County of Sacramento and partly in the County of San Joaquin, of the State of California, and known as the Rancho San José de los Moquelumnes, containing eight square leagues of land, and which is accurately described in the patent dated the 30th day of May, 1865, from the United States to Angel Maria Chabolla and others, the heirs of Anastasio Chabolla, which patent, with the map accompanying the same, fixes and determines the boundaries of said rancho, and which was, on the 11th day of October, 1865, recorded in the office of the County Clerk and *ex officio* County Recorder of Sacramento County, in Book No. 1 of Patents, on pages 129 to 147 thereof,

which record of said patent, for the purposes of description, is hereby made part of this order, and him, the said John F. McCauley, in such possession thereof from time to time maintain, keep and defend, or cause to be kept, maintained and defended, according to the tenor and true intent of said decree and order of said Court." Upon this writ is indorsed the return of the Sheriff, to whom it was directed, as follows: "I hereby certify and return, that I did, on the 11th day of May, 1868, serve the annexed writ, by placing John F. McCauley in the quiet and peaceable possession of all the interest and possession that William Hicks (defendant) had on the 30th day of November, 1861, 29th day of November, 1862, and the 10th day of November, 1864, or has since acquired or had, in and to the land mentioned and referred to in said writ, so far as the same could be ascertained by me, and that I did notify each and every person occupying the said land of the possession of the said John F. McCauley, and the said John F. McCauley declared himself satisfied with the service made above."

The return was made and filed in the Clerk's office, on the 12th day of May, 1868.

From the terms of this return, it is difficult to determine precisely what the Sheriff did under and by virtue of the writ. The Sheriff states that he *served* the same "by placing John F. McCauley in quiet and peaceable possession of all the interest and possession that William Hicks (defendant) had on the 30th November, 1861, 29th November, 1862, and 19th November, 1864, or has since acquired or had in the land mentioned and referred to in said writ, so far as the same could be ascertained by him; and that he notified every person occupying the said land of the possession of said John F. McCauley." It does not state that he ejected or removed William Hicks from said premises, or any portion thereof, nor does it state that he put McCauley in the exclusive possession of the premises, or any portion thereof, or in the joint possession with others. By the command of the writ, the Sheriff was required to eject and remove William Hicks from every portion of the lands, and to place McCauley, without delay, in full possession of all the right,

title and interest therein, which said Hicks possessed on the 30th day of November, 1861, or had since acquired; and, by necessary consequence, he must eject and remove from the premises, and every part thereof, every person whom he found in the possession or occupancy of said premises, or any part or parcel thereof, claiming under or through Hicks since the 30th day of November, 1861. But whether he did remove any such persons, or whether he found Hicks or any other person claiming under or through him, in possession, or whether he found others in possession claiming right or title independent of Hicks, does not directly appear from the return; but indirectly it does appear therefrom that other persons were in the occupancy of some portion of the premises. From the statement in the return by the Sheriff, that he "notified every person occupying said land of the possession of the said McCauley," and that all the persons whom he found in the possession or occupancy of any portion of the premises were permitted to remain with notice of McCauley's possession, from all which and the subsequent affidavit of McCauley, it is very evident that the writ was not fully executed.

From affidavits and the stipulations of the parties found in the record, it appears that at the date of the execution of the several mortgages by Hicks, up to the date of the Sheriff's sale of the mortgaged premises to McCauley on foreclosure, Hicks was the owner of an undivided interest in the entire eight square leagues comprising the Rancho San José de los Moquelumnes, to the extent of between an undivided one fourth and one third part thereof; that during all this time, and for several years prior to the 30th day of November, 1861, he was in the exclusive possession and occupancy of two distinct parcels of said rancho, one known as "Hicks' Pocket," containing about eight hundred acres, and another, known as the "Tule Field," containing about six hundred acres; that for some time prior to November 30, 1861, and continuously since that time, Hicks resided with his family in a house located on that parcel known as "Hicks' Pocket;" that on the 4th day of June, 1866, Mrs. Sarah B. Hicks, wife of William Hicks, defendant, by deed of gift from one

William Bandum, became vested, in her own right, as her separate property, of an undivided interest in said Rancho San José de los Moquelumnes, equal to an undivided two hundred acres, or about one one hundred and seventy-fifth part thereof; that all the owners of said rancho, on the 30th of November, 1861, were, and still continue to be, tenants in common of the same, and have not and do not hold by any other tenure. It follows from these facts, that, at the date of the several mortgages from Hicks to McCauley, the premises conveyed or encumbered thereby was an undivided interest or estate as tenant in common of the entire eight square leagues comprising the rancho, equivalent to between an undivided one fourth and one third thereof; that by virtue of such title and interest he had the right to the possession and occupancy of every part and parcel of the eight square leagues comprising said rancho, in common with his co-tenants, and had no right to the several possession or occupancy of any specific parcel or part thereof as against such co-tenants or any one of them, however insignificant his undivided interest might be, as compared with the whole; and the fact that he did exclusively occupy, cultivate and improve the specific parcels known as "Hicks' Pocket" and the "Tule Field" for ten years, would not vest in him a right to continue so to do, as against his co-tenants, or to exclude such co-tenants, or any one of them, from a joint occupancy with him of these parcels. Such was the right, title and interest purchased by McCauley at the foreclosure sale, and such the title and interest evidenced by his Sheriff's deed, in virtue of such purchase.

Says Mr. Justice Shafter, in delivering the opinion of the Court in *Carpenter* v. *Webster* (27 Cal. 545): "It is manifest that by the very law of the relation existing between tenants in common, each and every one of them has the right to enter upon and occupy the whole of the common lands and every part thereof. The rule that tenants in common hold their lands by unity of possession, inculcates something more than the technical truth that the possession of one tenant is *prima facie* the possession of the other. In our judgment, it also involves the doctrine that the tenants respect-

ively have a right to enter upon the whole and upon every part of the whole land, and to occupy and enjoy the whole and every part of it, and that the tenants respectively are restrained by correlative obligation from resisting an exercise of this right in either of its branches. The citations from Littleton go directly to this conclusion. 'They (the tenants) *ought* by law to occupy their lands or tenements in common.' 'Their occupation and possession *shall be* by law between them in common.' 'One tenant in common has a *right* of enjoyment of the common property.' (2 Bouvier's In. 314.) These quotations are wholly irreconcilable with the idea that one tenant in common, as such, can have the right to exclude his co-tenant from any portion of the common lands in advance of partition. Before partition one tenant in common has no share, except one which is undivided, and that he cannot possess in severalty for the reason that it is undivided."

It is clear, therefore, that as the mortgagor, Hicks, at the dates of his several mortgages, had, and at no time since said dates, has had any right to the exclusive possession in severalty of the particular portions of the rancho known as "Hicks' Pocket" and the "Tule Field;" the purchaser at the sale upon foreclosure of such mortgages acquired no right to the exclusive possession thereof, as against any other tenant in common of the entire rancho, and as Hicks, at the date of his several mortgages, had a right to the possession and occupancy of the lands embraced within the limits of the entire rancho, and every part and parcel thereof, in common with his co-tenants, McCauley, as the purchaser of that interest and right, on obtaining the Sheriff's deed therefor, was and is entitled to the possession of every part and parcel of the entire rancho, in common with, but not to the exclusion of, other parties who hold interests in the entire rancho, not derived from or through his mortgagor, Hicks.

Under and by virtue of the writ of assistance of the 7th of May, 1868, issued to the Sheriff, that officer was authorized and empowered, and it was his duty, to place McCauley in the possession of every part and parcel of the lands described

in the writ, jointly and in common with other parties hold-ing undivided interests in the same, or any part thereof, not derived from or through William Hicks, and to eject and remove from such lands, and every part thereof, William Hicks, and all persons holding, or claiming to hold, posses-sion or occupancy of any part or parcel under or through said Hicks; and until the Sheriff has fully performed this duty, he has not executed the commands of the writ. If he neglects or refuses to fully execute the writ, or makes a false return of his acts thereunder, he is liable to the party aggrieved as for neglect of duty or false return.

When, however, as in this case, the return fails to disclose facts from which the Court can clearly determine whether or not the writ has been fully executed, and it is made to appear to the Court, by affidavits, not contradictory of the return, but explanatory thereof, that the writ has not been fully exe-cuted, it is undoubtedly competent and proper for the Court, on motion of the party for whose benefit the original writ issued, to order and direct an *alias* writ to be issued; and the rights of the applicant in the premises, by virtue of his purchase, having been fully disclosed to the Court, the Court, in its order directing the writ to issue, should specifi-cally direct the proceedings of the officer in the execution of the writ.

From the return of the officer upon the original writ in this case, it does not appear—nor does it appear from any portion of the present record—that, in the execution of said original writ, Hicks, or any one else, was removed from the premises described therein, and it does appear from the record that the officer failed to fully execute the writ, in that he did not place McCauley in the possession of the entire rancho in common with his co-tenants. It further appears, that Mrs. Hicks, wife of William Hicks, holds in her own right, as her separate property, an undivided interest in the whole rancho, derived from a source independent of her husband; hence, she is not liable, under any writ to which the applicant has shown himself entitled, to be ejected or removed from the rancho, or any portion thereof; but she,

or any one in possession for her, was and is bound to admit the applicant to a joint and common possession and occupancy with her, not only of the house and two hundred acres surrounding the same, but of every part and parcel of the entire rancho. And under a writ of assistance in behalf of McCauley, it is the duty of the officer charged with its execution to put McCauley in possession of said house, and two hundred acres of land surrounding the same, jointly and in common with Mrs. Hicks and her husband, and the same in reference to that portion of the rancho claimed or held in exclusive possession by H. C. Swain, or any other tenant in common of the whole.

From these views it follows that the order of the Court below was entirely inadequate to the enforcement of the rights of McCauley under the decree of foreclosure, and erroneous in withholding further action against Hicks and wife and H. C. Swain.

The said order is therefore reversed, and the Court below directed to enter an order directing an *alias* writ of assistance to issue, to be enforced in accordance with the rights of the parties, as defined in this opinion